IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CAROL SPLETTSTASZER PLAINTIFF

VS. CIVIL NO. 05-5090

JO ANNE B. BARNHART,
COMMISSIONER, SOCIAL SECURITY ADMINISTRATION DEFENDANT

**MEMORANDUM OPINION**

Carol Splettstaszer ("plaintiff"), brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration denying her application for a period of disability and disability insurance benefits ("DIB"), under Title II of the Act.

**Background:**

The application for DIB now before this court was filed on August 25, 2003, alleging an onset date of June 1, 2003, due to carpal tunnel syndrome, colon problems, lower back and neck pain, depression, and hypertension. (Tr. 59-61). An administrative hearing was held on July 29, 2004. (Tr. 264-312). Plaintiff was present and represented by counsel.

At the time of the administrative hearing on July 29, 2004, plaintiff was fifty-three years old and possessed an eleventh grade education. (Tr. 14). She has past relevant work experience ("PRW"), as a circuit board assembler, cafeteria cook/server, and convenience store clerk. (Tr. 14).

On August 18, 2004, the Administrative Law Judge ("ALJ"), issued a written opinion finding that, although severe, plaintiff's impairments did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 23). After discrediting plaintiff's subjective allegations, the ALJ then concluded that she maintained the residual functional

capacity ("RFC"), to perform a wide range of light work, limited by her ability to only frequently finger with her right hand, occasionally work and/or reach overhead with her right arm, and frequently reach in any other direction other than overhead. (Tr. 23). As her PRW as a circuit board assembler and convenience store cashier were not precluded by plaintiff's RFC, the ALJ determined that she could return to these positions. (Tr. 23).

On March 22, 2005, the Appeals Council declined to review this decision. (Tr. 4-6). Subsequently, plaintiff filed this action. (Doc. # 1). The case is now before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is ready for decision. (Doc. # 8, 9).

**Applicable Law:**

In determining whether the ALJ properly disregarded plaintiff's subjective complaints of pain, the Court must determine if the ALJ properly followed the requirements of *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted), in evaluating her pain and credibility.

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. the claimant's daily activities;
> 2. the duration, frequency and intensity of the pain;
> 3. precipitating and aggravating factors;
> 4. dosage, effectiveness and side effects of medication;
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints



AO72A
(Rev. 8/82)

> solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

*Polaski*, 739 F.2d at 1322 (emphasis in original).

However, in addition to the requirement that the ALJ consider the plaintiff's allegations of pain, he also has a statutory duty to assess the credibility of plaintiff and other witnesses. *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992). The ALJ may discredit subjective complaints of pain inconsistent with the record as a whole. *Ownbey v. Shalala*, 5 F.3d 342, 344 (8th Cir. 1993).

In the present case, the record clearly reflects that plaintiff has been diagnosed with fibromyalgia. On April 9, 2004, Dr. Jharana Shrestha, a rheumatologist, evaluated plaintiff concerning chronic musculoskeletal pain. (Tr. 216-217). Plaintiff described the pain as generalized aching pain located "over the" joints and muscles. The pain was reportedly migratory, occurring primarily in the posterior neck, shoulders, lower back, knees, right thumb, and wrist joints. Plaintiff also complained of numbness and tingling in various areas of her body, primarily in the right hand; migraine headaches; irritable bowel syndrome; and non-restorative sleep. Following an examination, Dr. Shrestha reassured plaintiff that there was no evidence of joint or muscle inflammation. She had a full range of motion in all joints, except for her right shoulder, which had impaired abduction. However, plaintiff had 18/18 predefined tender points. Dr. Shrestha noted that there were no definitive diagnostic lab tests for fibromyalgia, but stated that he would perform diagnostic tests to exclude coexisting systemic illnesses or illnesses that mimic fibromyalgia. He indicated that plaintiff's history was consistent with primary Raynaud's phenomenon. In addition, Dr. Shrestha stated that plaintiff's condition was complicated by depression and chronic fatigue syndrome, noted that her condition was progressive in nature, and indicated that plaintiff's impairment affected her



AO72A
(Rev. 8/82)

ability to perform certain activities of daily living. As such, he ordered further diagnostic testing and prescribed Trazodone, Flexeril, and Mobic. (Tr. 216-217).

On May 21, 2004, plaintiff reported diffuse pain in her posterior cervical spine, shoulder, and right elbow. (Tr. 214-215). She also complained of a burning sensation in her right thumb. Dr. Shrestha again noted 18/18 trigger points, a decreased abduction in the shoulders, and osteoarthritic changes in the hands. As such, he diagnosed plaintiff with fibromyalgia syndrome, sleep disturbance, depression, irritable bowel syndrome, headaches, and chronic bilateral shoulder pain. Dr. Shrestha then prescribed Ultracet, Mobic, Trazodone, and Flexeril. (Tr. 214-215).

On July 9, 2004, plaintiff complained of pain in her neck, shoulders, knees, hand, and basically "all over." (Tr. 212-213). Dr. Shrestha again noted 18/18 trigger points and a limited range of motion in the shoulders with both active and passive motion. He diagnosed plaintiff with fibromyalgia syndrome/chronic pain syndrome, associated fatigue, headaches, depression, and a limited functional capacity. Dr. Shrestha then prescribed Darvocet, Zoloft, and increased her dosage of Trazodone. (Tr. 212-213).

Fibromyalgia involves pain in fibrous tissues, muscles, tendons, ligaments and other "white" connective tissues. Diagnosis is recognized by a typical pattern of diffuse fibromyalgia and nonrheumatic symptoms, such as poor sleep, trauma, anxiety, fatigue, irritable bowel symptoms, exposure to dampness and cold, and by exclusion of contributory or underlying diseases. See *The Merck Manual,* pp. 1369-1371 (16th Edition, 1992). Its cause or causes are unknown, there is no cure, and, perhaps of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms



AO72A
(Rev. 8/82)

are "pain all over," fatigue, disturbed sleep, stiffness, and—the only symptom that discriminates between it and other diseases of a rheumatic character— multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia), that when pressed firmly cause the patient who really has fibromyalgia to flinch.

We recognize that it is difficult to determine the severity of plaintiff's condition because of the unavailability of objective clinical tests. Some people may have such a severe case of fibromyalgia as to be totally disabled from working, but most do not. Michael Doherty & Adrian Jones, *Fibromyalgia Syndrome (ABC of Rheumatology)*, 310 BRITISH MED. J. 386 (1995). The question is whether the plaintiff is one of the minority, or not.

As documented above, the medical evidence clearly indicates that plaintiff has been diagnosed with fibromyalgia. (Tr. 212-217). In fact, prior to her diagnosis, physicians had documented plaintiff's reports of pain, numbness, loss of sleep, weakness, fatigue, and irritable bowel syndrome, all symptoms reasonably expected to be produced by plaintiff's fibromyalgia. (Tr. 153, 155, 167-168, 173, 178-179, 184-187, 205-210). Further, Dr. Shrestha noted that on April 9, 2004; May 21, 2004; and, July 9, 2004, plaintiff exhibited eighteen out of the eighteen possible fibromyalgic tender points. (Tr. 212-217). The ALJ, however, dismissed this evidence, stating that plaintiff was able to perform a variety of daily activities and could be seeking ongoing medical care for secondary gain. (Tr. 22). The Eighth Circuit has held, in the context of a fibromyalgia case, that the ability to engage in activities such as cooking, cleaning, and hobbies, does not constitute substantial evidence of the ability to engage in substantial gainful activity. *Brosnahan v. Barnhart*,



AO72A
(Rev. 8/82)

336 F.3d 671, 677 (8th Cir. 2003); *See Kelley v. Callahan,* 133 F.3d 583, 588-89 (8th Cir. 1998).

As previously stated, the ALJ dismissed plaintiff's subjective complaints of pain, stating that plaintiff could perform a variety of activities and could have been seeking medical treatment for secondary gain. (Tr. 22). Because the ALJ improperly discredited plaintiff's subjective complaints of pain without considering the impact of her fibromyalgia, we find that his conclusion that plaintiff is not disabled is not supported by substantial evidence in the record as a whole. Accordingly, we believe remand is necessary in order to allow the ALJ to further develop the record regarding plaintiff's fibromyalgia and for a reevaluation of plaintiff's subjective complaints in light of this diagnosis. On remand the ALJ should re-evaluate plaintiff's subjective allegations in accordance with *Polaski*, 739 F.2d at 1322, specifically discussing each *Polaski* factor in the context of plaintiff's particular case.

On remand, the ALJ is also directed to address interrogatories to the physicians who have evaluated and/or treated plaintiff—including, Dr. Shrestha—asking them to review plaintiff's medical records, complete a RFC assessment regarding plaintiff's capabilities during the time period in question, and to give the objective basis for their opinions so that an informed decision can be made regarding plaintiff's ability to perform basic work activities on a sustained basis during the relevant time period in question. *Chitwood v. Bowen*, 788 F.2d 1376, 1378 n.1 (8th Cir. 1986); *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985).

In addition, on remand, the ALJ is directed to properly consider the functional capacity evaluation completed by Kenneth Ness, a physical therapist. (Tr. 223-235). On February 17, 2004, Mr. Ness examined plaintiff and documented an extremely limited range of motion in plaintiff's



AO72A
(Rev. 8/82)

neck; multiple significantly painful periscapular and upper trapezius trigger points; a limited active range of motion in both shoulders; bilateral impingement/bursitis in the shoulders; multiple site tenderness to palpation and positive Tinel's signs at virtually all sites of major nerve entrapment of the upper extremities of the median, ulnar, and radial nerves; decreased grip strength in the right hand; and, diminished sensation in the finger tips. (Tr. 227). Based on these findings, he recommended that plaintiff seek a position that was non-repetitive, where resistances above five pounds were not routinely handled, and where reaching and overhead reaching was extremely limited. (Tr. 224). He indicated that plaintiff could perform sedentary work, requiring her to lift ten pounds infrequently and negligible weight frequently. No repetitive finger, wrist, elbow, or shoulder movements were recommended. As this was dismissed by the ALJ because it was much more restrictive than the RFC assessments prepared by the non-examining agency physicians in 2003, we believe that remand is also necessary to allow the ALJ to reconsider this evaluation. *Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000) (holding that the ALJ is not free to ignore medical evidence, rather must consider the whole record); *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (holding that "[t]he opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence").

**Conclusion:**

Accordingly, we conclude that the decision of the Commissioner denying benefits to the Plaintiff is not supported by substantial evidence and should be reversed for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).



AO72A
(Rev. 8/82)

ENTERED this 24th day of August 2006.

/s/ Bobby E. Shepherd
HONORABLE BOBBY E. SHEPHERD
UNITED STATES MAGISTRATE JUDGE



AO72A
(Rev. 8/82)